IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| TERRANCE HENRY CORRIGAN, III, | : | CIVIL ACTION |
| | : | NO. 14-1073 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LOCAL 6, BAKERY, CONFECTIONARY | : | |
| AND TOBACCO WORKERS, et al., | : | |
| | : | |
| Defendants. | : | |


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    March 4, 2015


        Plaintiff Terrance Corrigan ("Plaintiff") brings this

action against Independence Blue Cross ("Independence") and

Bakery, Confectionary, Tobacco Workers and Grain Millers

International Union Local 6 (the "Union"). Plaintiff alleges

that the Union breached its duty of fair representation to him,

and that Independence both breached its contract and was

negligent in failing to inform him of his right to continuing

insurance coverage after the termination of his employment. Both

defendants have moved for summary judgment, and Plaintiff has

moved for summary judgment against Independence. For the reasons

that follow, the Court will deny Plaintiff's motion and grant
both Defendants' motions.

## I.  BACKGROUND[1]

Plaintiff Terrance Henry Corrigan, III, was employed
from 1988 to 2012 as a maintenance mechanic for a Hostess Brands
plant in Philadelphia, Pennsylvania ("Hostess"). Second Am.
Compl. ¶ 4, ECF No. 36. During that time period, he was a member
of the bargaining unit represented by the Union under a
collective bargaining agreement (the "CBA") with Hostess. Def.
Union's Br. Supp. Mot. Summ. J. 3, ECF No. 59-1; Union Mot.
Dismiss Ex. C, ECF No. 2-4. Additionally, under the CBA, Hostess

---

[1]      The facts presented here are undisputed unless
otherwise noted.

It is worth noting that most of the factual assertions
in Plaintiff's Motion for Summary Judgment lack actual citations
to the record. Plaintiff's statement of the facts is twenty
paragraphs long; the first fourteen paragraphs have no citations
to the record and are, according to paragraph seventeen,
"established in the record by the testimony from depositions of
Terrence [sic] Corrigan," which are attached to the motion as
exhibits. Nowhere in those fourteen paragraphs does the motion
assist the Court in verifying Plaintiff's factual allegations by
citing a specific point in either deposition that supports any
individual fact. Nor does Plaintiff indicate whether his version
of the facts is disputed.

Where Plaintiff disputes facts that are easily
established by Defendants' own citations to the record without
"citing to <u>particular parts</u> of materials in the record," Fed. R.
Civ. Pro. 56(c)(1)(A) (emphasis added), and without "showing
that the materials cited do not establish the absence or
presence of a genuine dispute," R. 56(c)(1)(B), Plaintiff has
not actually demonstrated that those facts are disputed, R.
56(c)(1).

provided employer-sponsored health insurance through Independence.[2] Second Am. Compl. ¶ 31. Hostess, not Independence, was the plan administrator. See Independence Mot. Summ. J. Ex. 3 at 00284, ECF No. 58 ("THE CARRIER IS NOT THE PLAN ADMINISTRATOR UNDER THE COVERAGE OR FOR PURPOSES OF ERISA OR ANY OTHER FEDERAL OR STATE LAW. IN THE ABSENCE OF THE DESIGNATION OF ANOTHER PARTY AS PLAN ADMINISTRATOR, THE PLAN ADMINISTRATOR SHALL BE THE EMPLOYER."); id. Ex. 4, Reed Decl.

Hostess filed for bankruptcy in March 2012. Second Am. Compl. ¶ 5. On November 9, 2012, after negotiations for a modified collective bargaining agreement had stalled, the Union went on strike. Def. Union's Mot. Summ. J. Ex. 1, Fields Dep. 16:1-2, Oct. 3, 2014, ECF No. 59-2 [hereinafter Fields Dep.]. Before the strike, Hostess had warned employees that if they went on strike, Hostess would "have no choice but to shut down and liquidate the entire company," which would result in the

---

[2]       Plaintiff repeatedly claims that the Union was also a party to the contract between Independence and Hostess. To support this assertion, he points only to the contract itself, which does not mention the Union, and to Exhibit F of the affidavit he filed following his motion for summary judgment. See Pl.'s Br. Opp. Mot. Summ. J. Union 3, ECF No. 65. Curiously, that affidavit has no Exhibit F. See Aff. Terrance Henry Corrigan, III, ECF No. 61. This evidence, or lack thereof, is clearly insufficient under Federal Rule of Civil Procedure 56(c)(1) to show that the Union's relationship (or, again, lack thereof) to the contract between Independence and the Union is disputed – much less that Plaintiff's own interpretation is undisputed, as he is presumably suggesting.

termination of the employees' jobs, and that "[t]erminated employees w[ould] no longer receive paychecks or health and welfare benefits after their date of termination." Plaintiff was aware of Hostess's position at the time. Id. Ex. 2a, Corrigan Dep. 59:5-14, 60:12-19, Oct. 2, 2014, ECF No. 59-3 [hereinafter Corrigan Dep.]. Consistent with these warnings, when the employees went on strike on November 9, 2012, their health insurance benefits were immediately terminated. See id. Ex. 2c, Hostess Brands COBRA Continuation Coverage Election Notice, ECF No. 59-5.

On November 11 or 12,[3] 2012, Plaintiff was hospitalized at Aria Health Hospital, where he stayed until the beginning of December, at which time he returned to his home on Coral Street. Corrigan Dep. 22:16-24:3. During the course of his hospitalization, Plaintiff learned that he was no longer covered under Hostess's health insurance plan, and consequently, after his discharge, Plaintiff received a bill for $245,375.54 for his treatment at the hospital. Second Am. Compl. ¶¶ 11-12.

On November 16, 2012, while Plaintiff was hospitalized, Hostess (as Plan Administrator) mailed a notice of

---

[3]     Plaintiff insisted in his deposition that he was hospitalized on November 11. Corrigan Dep. 22:16-22. But his own motion for summary judgment and affidavit say that he became ill on November 11 and was hospitalized on November 12. Either way, the distinction is immaterial.

continuing coverage to Plaintiff at his Coral Street address.
Independence Mot. Summ. J. Ex. 4, Reed Decl ¶ 7. A certificate
of the notice's mailing was prepared the same day. Id. Plaintiff
claims that he never received this notice. Aff. Terrance Henry
Corrigan ¶ 15, ECF No. 61. The notice advised him that his
coverage ended on November 9, 2012, due to the strike, and that
he was entitled to continue his Hostess-sponsored health
benefits if he paid for continuation coverage by January 14,
2013. See Hostess Brands COBRA Continuation Coverage Election
Notice.

        Following Hostess's filing of bankruptcy, the Union
filed claims in the bankruptcy court for severance and vacation
pay that Plaintiff and other employees had earned before the
strike and liquidation. Corrigan Dep. 116:19-117:15. On February
28, 2013, Plaintiff attended a Union meeting concerning these
bankruptcy claims that the Union was filing on behalf of its
members. Id. 117:2-21. By that date, he was aware that
bankruptcy claims against Hostess needed to be filed by March
31, 2013, thanks to a letter the Union sent to its members on
February 15, 2013. Id. 130:15-24. The letter informed Plaintiff
of the March 31 deadline for monetary claims against Hostess,
and stated that the Union would be filing claims on his behalf
for vacation and severance pay. The letter did not state that
the Union would file any other types of claims, including claims

5

for medical bills. <u>See</u> Def. Union's Mot. Summ. J. Ex. 2c, ECF
No. 59-5. However, contrary to the information provided in the
letter, Plaintiff believed, from a conversation he claims to
have had with then-Union President Barry Fields after the
February 28 meeting, that his medical bill was "being handled"
by the Union. Corrigan Dep. 118:2-119:13, 131:1-19. For his
part, Fields claims that he told Plaintiff he had no health care
after the strike began. Fields Dep. 15:14-24. Plaintiff never
filed a bankruptcy claim for his medical costs. Corrigan Dep.
132:14-19.

Plaintiff initiated this action on January 6, 2014, by
filing a Complaint in the Court of Common Pleas of Philadelphia
County. The case was then removed to this Court on February 21,
2014. ECF No. 1. In turn, the Union filed a motion to dismiss,
ECF No. 2, which the Court granted with leave to amend, ECF No.
13. After Plaintiff filed an Amended Complaint, ECF No. 17,
Independence filed a motion to dismiss, ECF No. 1, which the
Court also granted with leave to amend, ECF No. 27.

On July 30, 2014, Plaintiff filed a Second Amended
Complaint. ECF No. 36. The Second Amended Complaint contains one
claim of a breach of the duty of fair representation against the
Union, and two claims against Independence: breach of
contract/breach of the implied covenant of good faith and fair
dealing, and negligence. Independence filed another motion to

6

dismiss, ECF No. 40, which is pending. Before the Court ruled on the motion to dismiss, both defendants filed motions for summary judgment. ECF Nos. 58, 59. Plaintiff filed for summary judgment as to its claims against Independence alone. ECF No. 57. The parties filed responses, and the motions are now ripe for disposition.

## II.   LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine

issue of material fact if a reasonable jury could find for the nonmoving party." <u>Pignataro v. Port Auth.</u>, 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)) (internal quotation marks omitted).

The guidelines governing summary judgment are identical when addressing cross-motions for summary judgment. <u>See</u> <u>Lawrence v. City of Phila.</u>, 527 F.3d 299, 310 (3d Cir. 2008). When confronted with cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." <u>Schlegel v. Life Ins. Co. of N. Am.</u>, 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (Robreno, J.) (alteration in original) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (1998)).

## III. DISCUSSION

### A.   <u>Defendant Independence Blue Cross's Motion for Summary Judgment</u>

Plaintiff asserts two claims against Independence: breach of contract/breach of the implied covenant of good faith

and fair dealing, and negligence. He claims that it was an "expressed or implied provision" of the contract between Independence and Hostess that Independence was required to notify Plaintiff of any discontinuation of his insurance benefits, Second Am. Compl. ¶ 32, and that Independence owed a duty of care to Plaintiff to inform him of such discontinuation, and his right to continue his coverage, id. ¶ 36. Independence asserts in response that both claims, which are state law claims, are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. No. 93-406, 88 Stat. 829 (codified as amended in scattered sections of 26 and 29 U.S.C.). Mem. Law Supp. Def. Independence Mot. Summ. J. 3, ECF No. 58.

Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."[4] 29 U.S.C. § 1144(a). The United States Supreme Court has concluded that "[t]he pre-emption clause is conspicuous for its breadth," Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990) (quoting FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990)) (internal quotation marks omitted), and that "[i]ts 'deliberately expansive language' was designed to 'establish pension plan regulation as exclusively a

---

[4]      It is undisputed that Independence's plan was an employee benefit plan within the meaning of ERISA, and that Plaintiff was a participant and/or beneficiary under such plan.

federal concern,'" id. at 138 (1990) (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46 (1987)). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96–97 (1983). Though "some ordinary state law or common law claims may be asserted against an ERISA plan," Kollman v. Hewitt Assocs., LLC, 487 F.3d 139, 150 (3d Cir. 2007) (citing Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 833 (1988)), the Third Circuit has concluded that a state law claim "relates to" - and is thus preempted by - ERISA if "the existence of an ERISA plan [is] a critical factor in establishing liability, and . . . the trial court's inquiry would be directed to the plan." The 1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers, 968 F.2d 401, 406 (3d Cir. 1992), cert. denied, 506 U.S. 1086 (1993).

Here, as in Nobers, where the plaintiffs brought breach of contract claims, Plaintiff's claim "depends on the existence of an ERISA plan." Id.; see also id. ("If an ERISA plan did not exist, the appellees would never have brought [the case]."). This Court's inquiry would certainly be directed to the insurance plan in determining whether Independence is liable for Plaintiff's alleged damages, since Plaintiff is claiming that Independence violated the terms of the plan – as such,

Plaintiff's claims "relate to" an ERISA plan and are preempted by the statute. See Kollman, 487 F.3d at 150 (finding that a state law malpractice claim was "plainly preempted" because it went "to the essence of the function of an ERISA plan" and the district court would "necessarily need to consult the Plan" in order to analyze the claim (internal quotation marks omitted)); Grabski v. Aetna, Inc., 43 F. Supp. 2d 521, 527 (E.D. Pa. 1999) (Robreno, J.) ("[T]his Court's inquiry in determining liability on the [breach of] contract claim would be directed to th[e ERISA] plan. [The] Plan is clearly at the heart of each of plaintiff's state law claims.").

Moreover, as in Ingersoll-Rand, where the Supreme Court found a state law cause of action preempted simply because it conflicted directly with an ERISA cause of action, 498 U.S. at 484-85, Plaintiff's claims are clearly covered by an ERISA provision. Both his breach of contract and negligence claims are based on assertions that Independence failed to notify him of the discontinuation of his insurance benefits and his right to receive continuing coverage. These claims are governed by ERISA (specifically, the Comprehensive Omnibus Budget Reconciliation Act, or "COBRA"), which details when and how plan participants are to be notified about the termination of their benefits and continuing insurance coverage after a qualifying event. 29 U.S.C. §§ 1161, 1166. ERISA has a civil enforcement mechanism.

29 U.S.C. § 1132. Plaintiff's state law claims thus conflict directly with an ERISA cause of action and are preempted in another way.

Therefore, Plaintiff's claims against Independence – both based in state law - are preempted by ERISA. Plaintiff has failed to present any factual or legal argument to the contrary – in fact, in his reply to Independence's motion for summary judgment, ECF No. 66, Plaintiff did not even <u>mention</u> Independence's ERISA argument. Independence is thus entitled to judgment as a matter of law on both of Plaintiff's claims against it.

Additionally, even if Plaintiff's claims were not preempted by ERISA, he has presented <u>no</u> factual or legal support for his assertions that Independence had contractual and tort duties to notify Plaintiff of the discontinuation of his health care. To the contrary, the plan administrator was indisputably Hostess, which did in fact notify Plaintiff of the discontinuation of his insurance benefits.[5] Therefore, even viewing the facts in the light most favorable to Plaintiff, nothing in the record suggests that Independence had any kind of duty, whether in contract or tort, to inform Plaintiff that his

---

[5]     Liability for failure to disclose to a former employee his COBRA right to continue his health insurance coverage by paying his own premiums attaches to the "plan administrator." 29 U.S.C. § 1166.

insurance coverage was ending. Plaintiff's claims, predicated entirely upon these alleged duties, must then fail.

And though the Court need not reach this issue either, Plaintiff's claim of negligence is further barred by Pennsylvania's gist of the action doctrine, which precludes a plaintiff from bringing tort claims that replicate breach of contract claims.

> The doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

Weed v. Ally Fin. Inc., No. 11-2808, 2011 WL 3803719, at *4 (E.D. Pa. Aug. 26, 2011) (citing eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 19 (Pa. Super. Ct. 2002)). Under this doctrine, "a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts.'" Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 104 (3d Cir. 2001). "To be construed as in tort . . . the wrong ascribed to defendant must be the gist of the action, the contract being collateral." Bash v. Bell Tel. Co. of Pa., 601 A.2d 825, 829 (Pa. Super. Ct. 1992) (quoting Closed Circuit Corp. of Am. v. Jerrold Elecs. Corp., 426 F.

Supp. 361, 364 (E.D. Pa. 1977)) (internal quotation marks
omitted), superseded on other grounds by rule amendment, Pa. R.
App. P. 341, as recognized in Keefer v. Keefer, 741 A.2d 808,
812 (Pa. Super Ct. 1999). Here, Plaintiff's negligence claim is
based upon exactly the same conduct as his breach of contract
claim: the failure to notify him that his health insurance was
terminating. These claims are clearly duplicative and exactly
what the gist of the action doctrine seeks to prevent. And the
action undoubtedly sounds in contract, not tort, since
Plaintiff's negligence claim says that Independence had a duty
of care "[b]y virtue of the contract." Second Am. Compl. ¶ 36.
Therefore, Plaintiff's claim of negligence merely replicates his
breach of contract claim and is barred by the gist of the action
doctrine.

Accordingly, Independence's motion for summary
judgment on Plaintiff's claims against Independence will be
granted.

B.   Plaintiff's Motion for Summary Judgment Against
     Defendant Independence Blue Cross

Because Plaintiff has not presented evidence upon
which a reasonable factfinder could find in his favor on either
of his claims against Independence, he is not entitled to
judgment as a matter of law, and his motion for summary judgment
must be denied.

Additionally, it cannot escape notice that neither Plaintiff's own motion for summary judgment nor either of his briefs responding to Defendants' motions cites any legal authority or, in fact, makes <u>any</u> legal argument at all.[6] Under the circumstances, Plaintiff has not demonstrated that he is entitled to judgment as a matter of law.

C.    <u>Defendant Union's Motion for Summary Judgment</u>

Plaintiff asserts one claim against the Union: a breach of the duty of fair representation, in violation of § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. He alleges the following facts in support of this claim:

- The Union knew or should have known that Hostess stopped paying healthcare insurance premiums to Independence in August 2012, and did nothing to protect its members.

- Union Vice President Henry McKay never responded to a January 30, 2013 letter from Plaintiff's attorney requesting an update on the status of Plaintiff's medical bill.

---

[6]       The Memorandum of Law in his own summary judgment motion is six paragraphs long and contains only a brief recitation of a few facts, followed by a bare assertion that given those facts, "Independence Blue Cross was obligated to pay Mr. Corrigan's bill." Pl.'s Mem. Law, ECF No. 57-1.

- Fields and McKay represented that there would be no problems with Plaintiff's insurance and that his legal rights would be protected in the bankruptcy court. If not for these representations, Plaintiff would have taken steps on his own to protect himself.

The nature of Plaintiff's claim is unclear. The Union construes his suit as a "hybrid" action, because ordinarily "an employee files a claim against the union alleging breach of the duty of fair representation together with a claim against the employer alleging breach of the collective bargaining agreement." Felice v. Sever, 985 F.2d 1221, 1226 (3d Cir. 1993). In such a suit, jurisdiction over the fair representation claim "is based on 28 U.S.C. § 1337(a)," while the claim against the employer "is filed under section 301(a) of the LMRA, 29 U.S.C. § 185(a)." Id. An employee bringing a hybrid claim must prove both that the employer breached the collective bargaining agreement and that the union breached its duty of fair representation.

Plaintiff has alleged a breach of the duty of fair representation in violation of § 301, which looks like a hybrid claim – but he has not even clearly alleged that Hostess breached the CBA, as he must in order to prevail on a hybrid claim, even if he sues only the Union. See DelCostello v. Int'l

16

Bhd. of Teamsters, 462 U.S. 151, 165 (1983) ("The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both."); Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 87 (3d Cir. 1982) ("[P]roof of the union's breach of its duty requires a finding that the employer violated the contract . . . ."); Findley v. Jones Motor Freight, 639 F.2d 953, 957-58 (3d Cir. 1981) ("[T]he employee must demonstrate that he did not receive fair representation from the union as well as proving his claim against the employer. These two elements must be established before the employee is entitled to relief under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1976).").

However, the Supreme Court has made clear that employees can bring either claim separately. See Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S. 67, 80 (1989) (holding that the relationship between claims against unions and employers "in no way implies . . . that a fair representation action requires a concomitant claim against an employer for breach of contract"); see also Felice, 985 F.2d at 1226 ("Either claim standing alone can be brought in federal court because each has an independent jurisdictional basis."). In other words, employees can have valid claims against their

17

unions, even if they do not have valid claims against their employers.

If Plaintiff's action against the Union is a hybrid one, his claim must fail because he has set forth no facts demonstrating that Hostess breached the CBA. And even construing Plaintiff's claim favorably to him as the nonmoving party and assuming that his claim is not in fact a hybrid one, his claim that the Union breached its duty of fair representation still cannot survive summary judgment. Each possibility is analyzed below.

### 1.   Plaintiff's Claim Construed as a Hybrid Action

Assuming that Plaintiff is attempting to bring a hybrid action, it is unclear exactly how Plaintiff believes Hostess violated the CBA. He seems to find it relevant that the Union's attorney stated in an email (before she entered an appearance on behalf of the Union) that it was her understanding that Hostess had stopped providing benefits in August 2012, months before the strike. Second Am. Compl. ¶ 24; Pl.'s Br. Opp. Mot. Summ. Judg. Union 1-2. But this argument goes nowhere for two reasons. First, it is based on nothing other than one – mistaken, it seems[7] – early factual belief of a lawyer for the

---

[7]        In a later letter to Plaintiff's counsel, that same lawyer explained that her misconception was based on a rumor that was spreading amongst Hostess employees at the time – a

Union, which is insufficient to demonstrate that this fact is disputed because nothing on the record suggests that Plaintiff's benefits were actually cut off in August 2012. In fact, Plaintiff himself continually argues that he paid for insurance through the end of his employment, and thus that he was covered through November 2012. Therefore, Plaintiff has failed to establish that Hostess breached the CBA by terminating his health insurance benefits before November 9, 2012. Second, undisputed facts on the record show that Plaintiff's health insurance was terminated on November 9, 2012, due to the closure of the plant he worked at following an employee strike, and the entirety of Plaintiff's medical bill was incurred after that date. In essence, even if Hostess had cut off Plaintiff's benefits in August 2012 and the Union had failed to represent Plaintiff fairly with respect to that breach, it would be irrelevant for the purpose of the claim at hand, because there was another termination of benefits that still occurred before Plaintiff's actual injuries. Accordingly, even viewing the facts in the light most favorable to Plaintiff, he has not demonstrated that this alleged termination of benefits in August

---

rumor that discovery revealed to be "entirely false." Def. Union's Reply Br. Supp. Mot. Summ. J., Aff. Nancy B.G. Lassen Ex. 1, Letter from Nancy B. G. Lassen to George Szymanski (Oct. 1, 2014), ECF No. 68-1.

2012 is a material fact. If this is the breach he alleges by
Hostess, his claim fails.

In his brief replying to the Union's motion for
summary judgment, Plaintiff also seems to argue that Hostess
breached its duties to him by failing to provide health
insurance coverage throughout November 2012 because of a
provision in the insurance contract that says:

> When a Covered Person ceases to be an Eligible
> Employee or Eligible Dependent, or the required
> contribution is not paid, the Covered Person's
> coverage will terminate at the end of the last month
> for which payment was made.

Pl.'s Mot. Summ. J. Ex. A at 00279, ECF No. 57-3. Since
Plaintiff has made no legal argument about the relevance of this
provision, he has failed to show that the existence of the
provision proves a breach of the CBA. In fact, nothing on the
record establishes that even if Hostess violated the insurance
contract – which is far from clear - it actually violated the
CBA, which is the relevant inquiry under Plaintiff's hybrid
claim.

Finally, Plaintiff insists that it is relevant that he
never received his COBRA notice of continuing coverage, saying
in his reply brief to the Union's motion for summary judgment:
"The bottom line is that if the COBRA notices were really sent
out, they were never received by Mr. Corrigan." Pl.'s Br. Opp.
Mot. Summ. J. Union 4. He also calls the Union's argument that

Hostess did mail COBRA notices a "red herring." Id. These arguments, such as they are, do not satisfy the legal standards that govern his claims.

While COBRA "contains no specific requirements as to the manner in which notice must be given," Smith v. Rogers Galvanizing Co., 128 F.3d 1380, 1383 (10th Cir. 1997), federal courts have held that it is sufficient for a plan administrator to make a good faith effort to comply with the statute. See, e.g., Degruise v. Sprint Corp., 279 F.3d 333, 337 (5th Cir. 2002) (holding that an employer acted in good faith by sending COBRA notices via certified mail and that it was not responsible for the fact that the plaintiff never received it); Smith, 128 F.3d at 1383 (collecting cases); Williams v. New Castle Cnty., 970 F.2d 1260, 1265 (3d Cir. 1992) (noting that the "good faith" requirement originated from the COBRA congressional committee). And as the Third Circuit has noted, the COBRA congressional committee intended for "notice by mail to the qualified beneficiary's last known address . . . to be adequate." Williams, 970 F.2d at 1265 (internal quotation marks omitted).

The legal issue, thus, is not whether Plaintiff actually received the COBRA notice to which he was entitled – it is whether Hostess "caused the notice to be sent in a good faith manner reasonably calculated" to reach Plaintiff. Keegan v. Bloomingdale's, Inc., 992 F. Supp. 974, 977 (N.D. Ill. 1998)

21

(quoting Jachim v. KUTV Inc., 783 F. Supp. 1328, 1334 (D. Utah 1992)) (internal quotation marks omitted).

The record is clear that Hostess, as the plan administrator, sent a timely COBRA notice by mail to Plaintiff's last known address. Plaintiff's skepticism about whether the notices were ever sent is based entirely on the fact that he claims he did not receive his; he offers no facts to counter the evidence, which includes a Certificate of Mailing, that Hostess did send him a notice. Such skepticism, based on mere suspicion, is insufficient to show that it is a disputed fact whether the notices were sent. Under Rule 56, Plaintiff must point to actual evidence on the record. This he has not done.

Accordingly, the undisputed facts show that Hostess made a good faith effort to notify its employees of their rights under COBRA to continuing coverage. See Lawrence v. Jackson Mack Sales, Inc., 837 F. Supp. 771, 782-83 (S.D. Miss. 1992) (collecting cases holding that a "plan administrator who sends proper notice by first class mail to the covered employee's last known address is deemed to be in good faith compliance with the [COBRA] notice requirements" (internal quotation omitted)). It is unfortunate, if true, that Plaintiff did not actually receive his notice, but neither Hostess nor the Union is liable for such a result. Moreover, Plaintiff has offered no reason to believe that this issue has anything to do with the CBA. COBRA is a

statutory right governed by ERISA, and Plaintiff does not argue that the notice requirements are in any way also contemplated by the CBA.

Therefore, Plaintiff has failed to show the existence of any material facts suggesting that Hostess breached the CBA, as he must in order to make out a hybrid claim against the Union. At the summary judgment stage, when a "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). That is clearly the situation here, so when Plaintiff's claim is construed as a hybrid action, the Union is entitled to judgment.

### 2.   Plaintiff's Claim Construed Only as a Claim of Breach of the Duty of Fair Representation

The duty of fair representation requires a union to "provide fair representation in the negotiation, administration, and enforcement of the collective bargaining agreement," Findley, 639 F.2d at 957, and is breached "when a union's conduct toward a member is 'arbitrary, discriminatory, or in bad faith.'" id. (quoting Vaca v. Sipes, 386 U.S. 171, 190 (1967)). A union's conduct is arbitrary when it "can be fairly characterized as so far outside a 'wide range of reasonableness' that it is wholly 'irrational.'" Air Line Pilots Ass'n, Int'l v.

23

O'Neill, 499 U.S. 65, 78 (1991) (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953)). "The standard for 'discriminatory' conduct has been analogized to the standard for a violation of Title VII of the 1964 Civil Rights Act, which contemplates discrimination based on race, color, religion, sex or national origin." Wilson v. Am. Postal Workers Union, 433 F. Supp. 2d 444, 449 (D. Del. 2006). And in order to prove bad faith, a plaintiff must show that the union intended to mislead, Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 47 (1998), which requires "substantial evidence of fraud, deceitful action or dishonest conduct," Humphrey v. Moore, 375 U.S. 335, 348 (1964).

Plaintiff has not alleged that the Union acted arbitrarily toward him or with discrimination or bad faith. In fact, Plaintiff has done little more than present a list of actions the Union "could have" taken, or should not have taken, without offering any legal authority demonstrating that the Union had a duty to do (or not to do) those things. Moreover, some of his arguments are based on nonexistent facts. For example, he claims that "Local 6 did absolutely nothing to enforce the group contract that Local 6 had with Independence Blue Cross." Pl.'s Br. Opp. Mot. Summ. J. Union 4. Not only does he fail to establish that the Union had any duty to do such a thing, but the Union was not a party to the contract with

24

Independence in the first place. Most of the rest of his arguments are, in fact, countered by Plaintiff's own testimony – he argues, for example, that the Union should have informed him that his health insurance was terminating, but Plaintiff concedes that he knew his health insurance benefits would end if the employees went on strike. And once again, Plaintiff has failed to establish that the Union had any duty to inform him about the end of his health insurance. It almost goes without saying that claims without legal or factual support cannot survive a motion for summary judgment.

Plaintiff's best argument that this claim should survive summary judgment would rest on the Union's alleged misrepresentations that the Union was "handling" his medical bills, because the issue of what the Union representatives told Plaintiff regarding his medical bill is disputed. But Plaintiff has failed to demonstrate that this fact is material, because again, he has alleged no facts showing that in making these representations, the Union's conduct was arbitrary, discriminatory, or in bad faith. Such a showing is necessary to a fair representation claim.

Moreover, to the extent that Plaintiff would have argued that the alleged misrepresentations fit into one of those three categories, Plaintiff cannot make out a claim because he has not shown that a "tangible injury proximately result[ed]

from the falsehood." <u>Deboles v. Trans World Airlines, Inc.</u>, 552

F.2d 1005, 1017 (3d Cir. 1977). The injury that Plaintiff claims

he suffered as a result of allegedly being told that the Union

was "handling" his medical bill is his failure to file a

bankruptcy claim.[8] But Plaintiff said in his own deposition, when

asked if he thought the Union was going to file a bankruptcy

claim on his behalf, that he "honestly didn't believe that there

would need to be a bankruptcy form filed," because he was "under

the impression" that he still had insurance under Independence.

Corrigan Dep. 131:20-132:8. The Union's alleged

misrepresentations, therefore, could not have caused Plaintiff

not to file a bankruptcy claim, since he believed it was

unnecessary to do so in the first place.[9] Nor did the Union ever

represent to Plaintiff that it was going to file a claim for his

medical bill. <u>Id.</u> 129:14-130:18. Therefore, Plaintiff has not

shown that the Union's alleged misrepresentations caused him not

to file a bankruptcy claim against Hostess, and he cannot make

---

[8]     Plaintiff claims that he was also injured by his
failure to file a grievance against Hostess and failure to
purchase healthcare insurance for himself after November 9,
Second Am. Compl. ¶ 29, but those injuries are connected to his
claim that the Union should have informed him when his health
insurance was ending – which, as discussed above, there is no
evidence that the Union had a duty to do.

[9]     The source of Plaintiff's belief is unclear, since he
was told by the hospital – before his conversations with the
Union - that he no longer had health insurance. Second Am.
Compl. ¶¶ 11-12.

out a claim on that basis.

Plaintiff's argument seems to boil down to the fact that the Union adopted Hostess's position that its employees' health insurance was cut off on November 9, 2012, when they went on strike. See Pl.'s Br. Opp. Mot. Summ. J. Union 4. As the Union argues, it "has no obligation to deny the facts established through discovery in this action, or to disagree with Hostess, in order to salvage Plaintiff's infirm claims." Def. Union's Reply Br. Supp. Mot. Summ. J. 6, ECF No. 68. In fact, under the rules adopted by this Court, its obligation to make accurate factual representations to the Court requires just the opposite. Pa. R. Prof'l. Conduct. 3.3 ("Candor Toward the Tribunal"). Further, the duty of fair representation does not require a union to match its legal positions to that of a member in litigation. See Humphrey, 375 U.S. at 349 ("[W]e are not ready to find a breach of the collective bargaining agent's duty of fair representation in taking a good faith position contrary to that of some individuals whom it represents . . . ."). Plaintiff has offered no facts showing that the Union's position about the termination of Plaintiff's health care was taken in bad faith. Therefore, while he may wish the Union had done more

for him,[10] he has failed to show that the Union was under a legal obligation to do so.

Ultimately, Plaintiff is unable to prove either that Hostess breached the CBA or that the Union breached its duty of fair representation to Plaintiff. As a result, whether or not his action is a hybrid one, his claim against the Union cannot survive summary judgment, and the Union is entitled to judgment as a matter of law.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant both Defendants' motions for summary judgment and deny Plaintiff's motion for summary judgment. An appropriate order follows.

---

[10]      Plaintiff complains of positions the Union adopted "instead of fighting for its members." Pl.'s Br. Opp. Mot. Summ. J. Union 4. But the law does not require the Union to pursue every fanciful theory of recovery in the course of representing its members. As the Union states in its reply brief, the Union is not "an all-purpose agent to effectuate Plaintiff's universe of legal interests." Def. Union's Reply Br. Supp. Mot. Summ. J. 5.